**SIGNED.**

Dated: October 19, 2010



_____
**JAMES M. MARLAR
Chief Bankruptcy Judge**

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HERITAGE ORACLE, LLC, | ) | No. 4:10-bk-15217-JMM |
| | ) | |
| | ) | **MEMORANDUM DECISION** |
| Debtor. | ) | |

  The Debtor filed Chapter 11 on May 18, 2010. Its principal asset is a parcel of commercial real property which has a building thereon of over 10,000 rentable square feet. The property generated $2,425 per month, in gross rentals, in recent months.

  About 2,908 square feet is currently not in rentable condition, and is unoccupied. The Debtor occupies a portion of the building, and neither pays rent nor has it serviced the secured debt or paid real property taxes (with a few recent exceptions).

  The property is worth $1,000,000 in the current market (appraisal of Mr. Bernstein). The debts against the property are:

| | |
|---|---:|
| Pima County real estate taxes as of 05/18/2010 (per schedules) | $91,382 |
| Alliance Bank first mortgage as of 07/8/2010 | 759,753 |
| SBA second mortgage as of 05/18/00 (per schedules) | <u>567,000</u> |
| | $1,418,135 |

Real estate taxes are unpaid for the years 2005, 2007, 2008 and 2009 (schedules). The Debtor recently made a payment to Pima County, for taxes, of $16,602.57 (Ex. 14). Alliance Bank has not received a principal or interest payment since June 1, 2009. It did receive one "adequate protection" payment last month.

The secured property is commercial in nature, and has no equity as the liens exceed the value of the property.

The income from the building is $2,425 per month. Real estate taxes are approximately $2,767 per month. Other monthly expenses are insurance ($606.22) and utilities ($1,180.27). Thus, the building requires $4,553 per month, exclusive of debt service. A cramdown rate of interest might be in the range of 5%-6% per year. On the debt to Alliance Bank, payments of interest only would be $3,165 per month (5%) or $3,798 per month (6%). This is an interest-only burden. There is no principal reduction in such figure.

The law mandates stay relief if there is no equity and the property is not necessary for an effective reorganization. The existence of "equity" compares the fair market value of a property to its total debt. *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1400 n.2 (9th Cir. 1984). Here, the property is worth $1,000,000 (testimony and appraisal of Mr. Bernstein). The debt is $1,418,135. Therefore, the "no equity" prong has been satisfied by the creditor.

The next prong is whether the property is necessary to an effective reorganization. The Debtor's principal's sole reason for desiring to stay at this location is that he would "lose 4-5 sales agents" if the business were to relocate. But, due to the small amount of commissions being generated by the existing agents in the current depressed real estate market, this perceived problem does not justify keeping the creditors secured by this land from exercising their legal rights.

In addition, the Debtor's principal stated that he needs $20,000 in gross revenues--which he hopes will begin in February, 2011--in order to support his plan of reorganization. Unfortunately, current losses and revenues during the five months of this case are well below that expectation (*see* Ex. 7-12). And, the Debtor has no new tenants under contract. The plan therefore appears to be speculative. The plan--which includes holding onto this real property--is too speculative to be confirmed. *See In re Acequia*, 787 F.2d 1352, 1364 (9th Cir. 1986).

1         The real property at issue is not actually "necessary" to "effectively" reorganize the Debtor's real estate brokerage and property management business. It is, in essence, a service business which can operate from any location. It does not truly need this particular property, nor is the location so unique as to mandate continuing to do business there. And, more importantly, it cannot afford the large amounts of expenses, taxes and reasonable debt service.

        The property is therefore too costly. Its ongoing property expenses, taxes and necessary debt service are an anchor on the business, dragging it down. The property is not necessary to this business.

        Because there is no equity and the real estate is not necessary to an effective reorganization, stay relief should be granted. Section 362 (d)(2).

        "Equity" is defined as "the value, above all secured claim against the property, that can be realized from the sale of the property for the benefit of the unsecured creditors." All liens against the encumbered property should be counted in determining whether the debtor has equity in the property under § 362 (d)(2). *Id. Mellor; Stewart v. Gurley*, 745 F.2d 1194, 1195 (9th Cir. 1984) (equity is "the difference between the property value and the total amount of liens against it").

        Lack of equity alone is not sufficient to grant relief from the automatic stay under § 362(d). In addition, such property must not be necessary to an effective reorganization. The Supreme Court has interpreted this provision to require a debtor to prove, not just that the property is indispensable to its reorganization effort, but that the property is essential for an effective reorganization that is in prospect. This means that there must be a "reasonable possibility of a successful reorganization within a reasonable time." *United Savings Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 375-76, 108 S. Ct. 626, 633, (1988) (emphasis added). A reorganization plan that is "wholly speculative" is not feasible and cannot be confirmed. *See Wiersma v. O.H. Kruse Grain & Milling (In re Wiersma)*, 324 B.R. 92, 112 (9th Cir. BAP 2005). The court "should not, at the conclusion of the debtor's case, be left to speculate about important elements and issues relating to the likelihood of an effective reorganization." *In re Anderson Oaks (Phase I) Ltd. P'ship*, 77 B.R. 108, 110 (Bankr. W.D. Tex. 1987).

Alliance Bank's stay relief motion will be granted (ECF No. 31).  A separate order will issue.

DATED AND SIGNED ABOVE.

COPIES to be sent by the Bankruptcy Notification Center ("BNC") to the following:

Michael W. Baldwin, Attorney for Debtor

Jonathan Saffer, Attorney for Alliance Bank of Arizona

Office of the U.S. Trustee